IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:10cr052 |
| | ) | |
| | ) | JUDGE HAYNES |
| RICKY LYNN WILLIAMS | | |

## MEMORANDUM

The United States of America filed this criminal action against defendant Ricky Lynn Williams, charging him with being a previously convicted felon in possession of a firearm.

Before the Court is Defendant's motion to suppress (Docket Entry No. 21) and memorandum in support (Docket Entry No. 47), to which the Government has responded (Docket Entry No. 46). Defendant seeks the suppression of all evidence obtained during the stop of his vehicle on February 13, 2010. Specifically, Defendant contends that officers lacked an adequate basis to stop Defendant's vehicle and the improper stop lead to the seizure of a firearm and incriminating statements. The Court held a suppression hearing on April 4, 2011. For the reasons stated below, Defendant's motion to suppress should be granted.

### A. ANALYSIS OF THE EVIDENCE

On February 13, 2010, at approximately 3:45 a.m., while working off duty at a Waffle House, Detective Chestnut of the Clarksville Police Department received information from an unidentified citizen that a large fight was about to begin at C-Ray's Social Club. According to Detective Chestnut's report, when asked who was about to fight, the individual reported that "they did not know but some black dude went got a gun out of his car." (Docket Entry No. 47,

1

Attachment 1, at 4). The citizen further advised that it was "a dark colored car." Id. Detective Chestnut initiated an over-the-air report to dispatch about 10-15 persons fighting in the parking lot, which was reported to Clarksville Police Department officers. Id. The information was updated at 3:47 a.m. reflect a dark blue vehicle with a gun in the truck, and at 3:49 a.m. to reflect a black vehicle. (Docket Entry No. 47, Attachment 1, at 1). The dispatch report reflects an officer stopped the vehicle at C-Ray's at 3:51 a.m. Id.

Officer Lynn Scudder of the Clarksville Police Department was the only witness to testify at the suppression hearing. Officer Scudder, an officer for eight years, has responded to C-Ray's before and testified that C-Ray's has a history of weapons and fights. Officer Scudder responded to C-Ray's on this occasion due to information that a man had a gun in a green Cadillac that was involved in an altercation. She was not the first responder to C-Ray's and did not know if a fight actually occurred. Officer Scudder acknowledged that the dispatch records stated the subject vehicle was a dark vehicle. Officer Scudder testified that she was notified by another officer that the subject vehicle was a green Cadillac, but could not then recall who notified her. Officer Scudder explained that officer calls to other officers would not appear on dispatch records. Officer Scudder's report reflects that as she entered the lot, Officer Matos stated he saw a dark colored Cadillac that looked like it was trying to get away from police pulling behind the business. (Docket Entry No. 47, Attachment 1, at 6). Sergeant Galbraith's report reflects that Detective Chestnut advised Galbraith that the subject vehicle was a green Cadillac upon arrival. Id. at 5.

Officer Scudder testified that C-Ray's has approximately four entrances and patrons park in the parking areas of nearby businesses. Officer Scudder approached the area from one of the front entrances close to the club. It was dark and she encountered cars and people everywhere.

2

Officer Scudder observed a dark green Cadillac coming towards her, but the Cadillac entered the alley behind the businesses when it saw her vehicle. The Cadillac traveled slowly in the alley and was not facing the four parking lot exits. The alley is rough and has potholes. Travel in the alley raised Officer Scudder's suspicion because it was "not normal" to exit through the alley. Officer Scudder followed the Cadillac past approximately three buildings and conducted an investigatory stop in the area adjacent to the Killer Rabbit tattoo shop. Officer Scudder marked a photograph with the Defendant's direction of travel. (Government Exhibit 1 to the Suppression Hearing). As indicated by the number "2" on that drawing, Defendant's vehicle was then out of the alley and would have been facing the city street.

The Defendant was the sole occupant of the vehicle. Defendant was driving with a suspended driver's license and Officer Scudder placed him under arrest for this offense. Defendant informed Officer Scudder that he had marijuana in his pocket and Officer Scudder removed a Crown Royal bag with marijuana. Defendant also stated that he had a pistol in the center console of the vehicle, which Officer Scudder recovered. The Defendant was cooperative and truthful during the traffic stop. Defendant made incriminating statements during a subsequent custodial interrogation.

On cross examination, Officer Scudder testified that she did not have any information on the purported fight. C-Ray's employs armed security that detains fighting patrons on some occasions, but Officer Scudder did not know if anyone was detained on that date. Photographs from Docket Entry No. 47-3 were admitted as Defendant's Collective Exhibit 1.

### B. CONCLUSIONS OF LAW

The Fourth Amendment protects individuals from unreasonable searches and seizures and evidence that stems from unreasonable searches or seizures must be suppressed. Wong Sun v.

United States, 371 U.S. 471, 488 (1963). Traffic stops are seizures within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10 (1996).

"Under the Fourth Amendment, there are three types of permissible encounters between police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or Terry[1] stop which must be predicated upon 'reasonable suspicion;' and arrests which must be based on probable cause." United States v. Alston, 375 F.3d 408, 411 (6th Cir. 2004) (quoting United States v. Bueno, 21 F.3d 120, 123 (6th Cir. 1994)).

Defendant's motion argued that Officer Scudder lacked reasonable suspicion to conduct the traffic stop. At the hearing, the Defendant argued that dispatch lacked information that this Defendant committed a crime and there was no corroboration of the tip regarding the purported fight. The Government responded that "the initial stop of the vehicle, the only basis for suppression alleged by the defendant, was valid under the totality of the circumstances." (Docket Entry No. 46, at 4). At the hearing, the Government acknowledged it was a Terry stop and argued there was reasonable suspicion due to the specific information about the vehicle, gun and location, Officer Scudder's observation of a car matching the description leaving C-Ray's, and the vehicle's travel in the alley.

Here, Officer Scudder made a Terry stop on Defendant's vehicle. To be lawful, Officer Scudder must have then had a "reasonable, articulable suspicion that the person [stopped] *has been*, is, or is about to be engaged in criminal activity" in light of the totality of the circumstances. United States v. Hensley, 469 U.S. 221, 227 (1985) (citation omitted and emphasis in original). For reasonable suspicion "the likelihood of criminal activity need not rise

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

4

to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). "The most frequently recurring factors utilized in the Sixth Circuit's analysis [of whether the officer had reasonable suspicion] include: (1) nervous/evasive behavior, (2) furtive movements made in response to police presence, (3) the speed of a suspect's movements, (4) presence in a high-crime area, and (5) the time of day." United States v. Brock, No. 07-20400-STA, 2008 WL 4279623, * 3 (W.D. Tenn. Sept. 12, 2008) (citations and footnotes omitted).

In Florida v. J.L., 529 U.S. 266, 268 (2000), there was an anonymous tip that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. About six minutes later, officers observed a male matching that description at the bus stop and conducted a Terry stop. Id. "The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements." Id. The Supreme Court held that the tip alone did not provide reasonable suspicion. Id. In so holding, the Supreme Court stated:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

Id. at 272 (citation omitted).

In Feathers v. Aey, 319 F.3d 843, 850 (6th Cir. 2003), officers found a person matching the description and location of an anonymous tip, but the Sixth Circuit held that there was not reasonable suspicion.

> Here, the caller did not provide the dispatcher sufficient information to support a reasonable suspicion. The caller's suggestion, after refusing to leave his name, that the police could "have somebody come by here," J.A. at 70, hardly provides

5

> the reliability that comes from an identified or repeat informant. See Illinois v. Gates, 462 U.S.213, 228-29, 233-34 (1983) (suggesting that tip might be made more reliable if it came from an informant "known for the unusual reliability of his predictions" or from "an unquestionably honest citizen," neither of which was present here). Similarly, the informant offered no future predictions or inside information that would suggest a special knowledge of Feathers's allegedly criminal activity. Indeed, the anonymous tipster did not even allege *any* criminal activity; it was the dispatcher, not the tipster, who suggested that Feathers might be carrying a weapon. The caller said only that Feathers pointed "something" at him, but that the caller "d[id]n't know what he pointed," J.A. at 70, a comment that the dispatcher reported as "supposed to be carrying a weapon," J.A. at 71. Accordingly, if the basis for the Terry stop is the information in the dispatch alone, then the detention lacked reasonable suspicion.
>
> The officers allege that the "totality of the circumstances" justified their search. Indeed, if their observations, when combined with the information provided to the dispatcher, supported a finding of reasonable suspicion, the detention would be permissible. The officers suggest that by corroborating the information from the tip, and finding a shirtless white male on North Howard Street, they were able to form a reasonable suspicion that justified a Terry stop. However, the only information that they corroborated is precisely the information that the Supreme Court ruled fails to support reasonable suspicion in an anonymous tip. Feathers's identity consisted of "easily obtained facts and conditions existing at the time of the tip, [not] future actions of third parties ordinarily not easily predicted." Alabama v. White, 496 U.S. 325, 332 (1990). Even when taken as a whole, the totality of the circumstances here do not support a finding of reasonable suspicion. An anonymous tip that an individual pointed something at a tipster does not support a finding of reasonable suspicion even when police find the described individual in the relevant area. The Terry stop thus violated Feathers's Fourth Amendment rights.

Id. at 850 (emphasis in original).

In United States v. Patterson, 340 F.3d 368, 369 (6th Cir. 2003), there was an anonymous tip that a group of males located at a crime "hot spot" intersection were conducting drug sales. Officers observed a group of males in close proximity to the reported location that did "not alter their behavior until the officers got out of their [unmarked] car dressed in police gear" and then walked in the opposite direction. Id. Officers observed another person in the group make a throwing motion towards the bushes. Id. at 370. Yet, the officers had no other information

6

about defendant Patterson to corroborate the anonymous tip. Id. at 371. The Sixth Circuit held that there was no reasonable suspicion to conduct a Terry stop of defendant Patterson. Id.

In Alabama v. White, 496 U.S. 325, 332 (1990), the Supreme Court concluded that although it was a "close case," there was sufficient corroboration of an anonymous tip to justify a Terry stop. Officers received an anonymous telephone tip that "Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attaché case." Id. at 327. The officers then went to the apartments, saw a vehicle matching the description provided, observed a woman leave the building carrying nothing and enter the vehicle, followed the vehicle as it drove towards motel, and stopped the vehicle shortly before the motel. Id.

Here, at approximately 3:45 a.m., an off-duty officer received a tip from an anonymous citizen that a black male in a dark vehicle had a gun at C-Ray's and a large fight was about to begin. This information was relayed to other officers. Officer Scudder's uncontested testimony was that she received additional information that it was a green Cadillac. The anonymous tip information alone was insufficient to provide reasonable suspicion. J.L., 529 U.S. at 268.

The Court considers whether, in light of the totality of the circumstances, other corroborating evidence with the tip provided reasonable, articulable suspicion that the occupant of the green Cadillac had, was, or was going to be engaged in criminal activity at the time that Officer Scudder made the Terry stop. Prior to making the Terry stop shortly before 4:00 a.m., Officer Scudder observed a green Cadillac at C-Ray's. Thus, the vehicle and location matched the information that Officer Scudder had been provided. The only other evidence Officer Scudder then had was her observation of the Cadillac entering and traveling in the alley behind

the businesses at a slow rate of speed. Officer Scudder found this suspicious because it was "not normal" to exit this way.[2] On the officer's drawing, the traffic stop occurred in the area next to the tattoo shop when the Cadillac was out of the alley and facing the city street. Officer Scudder did not observe the gun or any nervous or evasive behavior by the Defendant. To the contrary, Officer Scudder testified that the Defendant was driving slowly, stopped his vehicle, and was cooperative. There was also no verification of the purported fight.

The Court next examines the existing contextual considerations. In <u>United States v. Caruthers</u>, 458 F.3d 459, 467 (6th Cir. 2006), the Sixth Circuit noted the relevant contextual consideration of time of day and crime area in supporting the stop, but warned not to rely "too easily or too heavily" on these contextual factors. The Sixth Circuit held that based on the totality of the circumstances, "an individual, whose general appearance and location matched the description given in the anonymous shot-fired call, fled and made furtive movements when approached by the police late at night [1:20 a.m.] in a high-crime area -provided reasonable suspicion to conduct a <u>Terry</u> stop." <u>Id</u>. at 468.

Here, the stop occurred shortly before 4:00 a.m. in an area known for weapons and fighting, which are relevant factors that support the stop. Yet, the Defendant was driving slowly, fully complied, and did not demonstrate nervous or evasive behavior, which are also relevant factors that do not support the stop. After considering the totality of the circumstances, the Court concludes that there was not reasonable suspicion for the <u>Terry</u> stop of Defendant's vehicle on February 13, 2010. Accordingly, the Defendant's motion to suppress (Docket Entry No. 21) should be granted.

---

[2] There was no explanation offered of why it would be unusual to drive in the alley behind the businesses and exit the alley into the area facing the main street when cars and persons were present everywhere in the parking lots.

8

An appropriate Order is filed herewith.

Entered on this the 13th day of April, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge